Filed 5/29/13  P. v. Flores CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LARRY M. FLORES,<br><br>    Defendant and Appellant. | B237842<br><br>(Los Angeles County<br>Super. Ct. No. KA091635) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Tia Fisher, Judge.  Affirmed.

Jamilla Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Eric E. Reynolds and Ana R. Duarte, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Larry Flores (appellant) appeals from a judgment entered after a jury found him guilty of assault with a deadly weapon. The trial court sentenced him to six years in prison on the offense plus an enhancement described below. Appellant contends the trial court abused its discretion in responding to a question from a juror regarding the difference in height between appellant and his brother, who were standing near each other at the time of the incident.

## BACKGROUND

**Prosecution Case**

On August 8, 2010, Sylvia Mendez was at a restaurant/bar with her sisters-in-law, Ruth Mendez and Sonia Mendez. Appellant also was there with his brothers, Jerry Flores and Albert Garcia Flores, and others. Sylvia had known appellant since she "was little." He used to be in a car club with her father.

Sylvia, Ruth and Sonia were sitting at the bar. According to Sylvia, appellant stood behind her and kicked the stool she was sitting on a couple of times. Sylvia did not react. As she was leaving the bar at the end of the night, Sylvia heard appellant mumble the word "bitch" to her. She did not respond. As she exited the establishment to go to the parking lot, she heard appellant say, "fuck your family." Neither Ruth nor Sonia heard appellant say anything to Sylvia at the bar or upon leaving the restaurant/bar.

Sylvia got into Ruth's car with her sisters-in-law. Ruth was in the driver seat, Sylvia was in the front passenger seat and Sonia was in the backseat directly behind Sylvia. The window next to Sylvia was rolled down. As Ruth drove through the parking lot, Sylvia "flipped [appellant] off." In other words, Sylvia made a hand gesture at appellant where she lifted and showed him her middle finger. Appellant was standing in a group of three or four people on a rock-covered hill.

Sylvia testified she saw appellant with an object in his hand and she saw him make movements like he was throwing the object at her. Sylvia lifted her right hand to try to block the object. She felt something hit her face. She noticed her face was bleeding.

Ruth testified she heard Sylvia exchange words with appellant before Sylvia "flipped [appellant] off." Ruth saw appellant bend down and pick something up. Then

2

she saw another man walk down the hill behind appellant and bend down like he was picking something up. Appellant made a motion like he was "pull[ing] back to throw something." Appellant was about 18 feet away from Ruth's car. Ruth braced herself because she believed an object was going to hit her car.

On rebuttal, Sonia testified she saw appellant bend down, pick something up and make motions like he was throwing an object. Appellant was standing on the hill with one or two other men.

Ruth drove a short distance to a Denny's restaurant where one of the three women called the police. Ruth noticed a rock on the front passenger floorboard of her car which she did not see earlier.

Officer Alan Pucciarelli responded to the Denny's restaurant at about 1:30 a.m. He observed a laceration on Sylvia's cheek and a small cut on her right hand. Sylvia required three or four stitches on her cheek. Officer Pucciarelli recovered a one-pound rock from the front passenger floorboard of Ruth's car.

**Defense Case**

Appellant called Robert Espinoza, Sylvia's father, as a witness. Espinoza used to be in a car club with appellant. More than five years before the incident, appellant left the club because he had a problem with how Espinoza ran it.

Appellant's girlfriend, Jennifer Villafana, testified for the defense. She was with appellant and his two brothers at the restaurant/bar on August 8, 2010. She did not know Sylvia. Villafana did not recall seeing Sylvia at the bar and she did not hear appellant say anything to her. As Villafana, appellant and the rest of their group were leaving the restaurant and walking to their cars, a car drove by fast and almost hit Villafana. Appellant pushed Villafana out of the way of the car. Appellant "threw his hands up and told [the people in the car], 'What the fuck?'" Villafana did not see appellant pick up a rock or throw a rock.

Appellant's brother, Jerry Flores, also testified for the defense. As his group was walking to their cars, a car drove around a corner fast and Jerry heard the car's engine rev. Someone inside the car said, "move out of the way fat guy," or something like that.

3

Jerry heard the sound of laughing coming from inside the car. Jerry "picked up a rock like [he] was gonna throw it," but he did not throw it at the car. Appellant was standing to Jerry's side, but Jerry did not see what appellant was doing at that point. Jerry did not see appellant pick up a rock.

On cross-examination, Jerry testified about the differences between his appearance and appellant's appearance at the time of the incident. Appellant was bigger and heavier than Jerry. Appellant had a thick, handlebar mustache. Jerry had a thin mustache. Appellant had a "military"-style haircut. Jerry was bald. Jerry is one year younger than appellant.

Appellant's brother, Albert Garcia Flores, also testified for the defense. Like Jerry, Albert saw a car drive by and heard the engine revving. As the car drove toward Albert and his group, Albert heard a woman inside the car yell, "get out of the road you fat son of a bitch." Albert did not see what appellant did after the car drove by. He did not see appellant or Jerry pick up a rock or throw a rock.

The parties stipulated that Jerry is 5 feet 11½ inches tall and appellant is 6 feet three-quarters inches tall.

**Verdicts and Sentence**

The jury found appellant guilty of assault with a deadly weapon, a rock (Pen. Code,[1] § 245, subd. (a)(1)). The jury found not true the allegation that appellant personally inflicted great bodily injury on Sylvia within the meaning of section 12022.7, subdivision (a).

Appellant waived jury trial and admitted the special enhancement allegation that he committed the charged offense while on bail in another case, within the meaning of section 12022.1. On the People's motion, the trial court struck the prior conviction allegations under the Three Strikes law (§§ 667, subd. (b)-(i) & 1170.12, subds. (a)-(d)), which were alleged in the information.

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

The trial court sentenced appellant to six years in prison in this case: the upper term of four years on the offense, plus a consecutive term of two years on the enhancement under section 12022.1. The court also imposed a one-year consecutive term in the criminal case in which appellant was on bail when he committed the charged offense in this case.

## DISCUSSION

Appellant contends the trial court abused its discretion in responding to a question from a juror regarding the height difference between appellant and Jerry.

**Proceedings Below**

During voir dire a prospective juror (who wound up serving on the jury) indicated that, during his prior jury service, he wondered why certain evidence was not presented to the jury. The trial court explained that if a juror had a question during trial, he or she could write it down and the court would decide whether the question should be asked.

As part of the court's preliminary instructions before opening statements, the trial court instructed the jury with CALCRIM No. 106 regarding juror questions. Before reading the instruction, the court stated: "I'm going to read this instruction because of the conversation I had with the gentleman who is currently Juror Number 11, because I talked about it. But there's actually an instruction. And this was relative to the concerns you expressed on a previous trial and I talked a little bit about if something came up like that and there's a procedure. So I'm going to read that to you by way of instruction because I want to make sure that I formalized what I stated to you, sir."

Then the trial court read CALCRIM No. 106, which provides: "If, during the trial, you have a question that you believe should be asked of a witness, you may write out the question and send it to me through the bailiff. I will discuss the question with the attorneys and decide whether it should be asked. Do not feel slighted or disappointed if your question is not asked. Your question may not be asked for a variety of reasons, including the reason the question may call for an answer that is inadmissible for legal reasons. Also, do not guess the reason your question was not asked or speculate about

5

what the answer might have been.  Always remember that you are not advocates for one side or the other in this case.  You are impartial judges of the facts."

As witnesses testified for the prosecution and the defense, the trial court repeatedly asked the jurors if they had any questions.  During the defense case, after appellant's brothers Jerry and Albert testified, the trial court again asked the jurors if they had any questions.  Juror No. 9 submitted a written question, inquiring about the difference in height between appellant and Jerry.  After the court reviewed the question and held a sidebar conference with counsel, the following exchange occurred between the court, counsel and others in the courtroom, in the presence of the jury:

"The Court:  I'm going to allow the question to be asked.  When this happens, I'm the one who asks the questions rather than the attorneys.

"I've been told that I think perhaps Jerry is still out in the hallway, and I'm going to ask Mr. Higgins [the prosecutor] if you'd go ahead and bring him on in.  The question is what is the height difference between the brothers Larry [appellant] and Jerry.  And rather than have it in inches or something, I can just have Jerry Flores come on in.  I can have Larry Flores come on up and you can eyeball it yourself.  Sometimes just hearing inches or something doesn't have the same kind of impact.

"[Defense counsel]:  I'm going to object.

"The Court:  Overruled.  Sir, I'm going to have you come on up here and just the question was because there were some questions asked of you and how your size and so on and I'll just have a deputy -- Mr. Larry Flores, sir, if you could please stand up maybe behind the chair.  I'm just going to direct it a little bit because I don't want Mr. Higgins in the way.  And then I'm going to just right there, Deputy Loya; is that correct?

"The Bailiff:  Yes.

"The Court:  Maybe Mr. Larry Flores just go ahead and face the jury and then Mr. Jerry Flores, any problem with having them side by side so the jury can -- you don't know how tall you are.

"Witness Jerry Flores:  I don't know, about 5'9".

6

"The Court: And people have shoes on, too. This is where things get a little bit challenging. Let's do it this way. Mr. Flores, you can go ahead and have a seat. Mr. Flores, Larry Flores, sir, you can go ahead and have a seat. And then what we can do I'm going to call you back in here and we're going to deal with this after we finish up with this witness because that's -- asking this witness [Albert] the difference between brothers [appellant and Jerry], understand, any parent might understand that might be a little bit challenging but we're going to see if we can get that question answered.

"Do any jurors have any questions of this witness other than the question that Juror No. three [sic] raised? No. Mr. Jerry Flores, go ahead and wait out in the hallway, please. Wait out there. We'll have you come back in here again.

"If counsel wishes to inquire of this witness of that question, that's fine. I'll leave that up to counsel. But I do intend to follow through in the manner, you know, figure out some way to get a more objective standard." Counsel did not have further questions for Albert and he was excused.

Outside the presence of the jury, the trial court allowed defense counsel "to make a record as to why you think the question is objectionable." Defense counsel responded: "I think that it's not for the jury to ask any questions at all with the testimony or anything. You know, the presentation of the evidence is for the attorneys and with certain limitations to the court. [¶] . . . [¶] So the jury does not have that right to ask any questions."

The trial court overruled defense counsel's objection on grounds it was untimely. The court pointed out counsel did not object to the procedure for juror questions when the court explained it during voir dire. Counsel did not object when the court again explained the procedure before opening statements when it instructed with CALCRIM No. 106. Nor did counsel object when other jurors submitted questions during the prosecution case which were answered by the witnesses. The court stated: "Now you're objecting about the whole procedure that we've been following the whole trial and there never was an objection. It's untimely, but there is a procedure in place that authorizes

7

juror questioning and the instruction needs to be read and the procedure needs to be followed and that's what I'm doing."

After a recess, the trial court stated to the jurors: "It took a little while, ladies and gentleman, because we were involved in some measuring and have with the assistance of under the guiding hand of the court, that would be me, simply giving instructions from afar, to Mr. De La Mora [defense counsel] and Mr. Higgins and as to how to measure as in stand with the back to the wall and, you know, put a straight object across and make a mark and so on and so forth. They have done so with Mr. Larry Flores as well as we had Jerry Flores come on in here. I made sure that Jerry took his shoes off. The lawyers are now at a point where they are prepared to stipulate to the heights based on the inquiry of Juror three [sic].

"And a stipulation, ladies and gentlemen, when the attorneys stipulate, and I've indicated I will accept the stipulation, that stipulation means that this is proven fact. That's what a stipulation is. And that's why I was just explaining what was going on because it -- given the care which both counsel and the court have taken through the trial, they just ensure that -- when things are marked and so on, that it's not necessarily using words that can mean different things to different people but having a sense of measurement and that's what height ultimately is.

"So Mr. De La Mora and Mr. Higgins, my understanding, gentlemen, is that you've reached a stipulation that Mr. Jerry Flores is 5 feet 11 and a half inches and that Mr. Larry Flores, the defendant, is 6 feet and three-quarters inches."

Counsel did not object to the trial court's comments. The parties stipulated as set forth above.

The following day, in response to a different question submitted by another juror, the trial court reread to the jury CALCRIM No. 106 (quoted above) regarding the procedure for juror questions.

**Analysis**

As set forth above, Flores contends the trial court abused its discretion in responding to Juror No. 9's question about the difference in height between appellant and

Jerry. Specifically, Flores argues the court erred in responding to the juror's question by conducting a measurement of appellant and Jerry rather than by eliciting testimony from a witness regarding the height difference.

Moreover, Flores argues the court's comments to the jury about the parties' stipulation were erroneous because the comments constitute "testimony [by the court] describing and vouching for the reliability of the out-of-court measurement process." Flores asserts the court's "testimony" "rendered appellant's trial fundamentally unfair and violative of due process, denied appellant his confrontation clause rights, and rendered his conviction and sentence unreliable, in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and parallel provisions of the California Constitution." Flores also asserts the court acted as a biased advocate, and Flores was denied an opportunity to cross-examine the court's "testimony."

**Forfeiture**

The Attorney General argues Flores has forfeited his claim regarding the trial court's response to Juror No. 9's question. We agree.

As discussed above, defense counsel objected when the trial court brought Jerry into the courtroom to stand next to appellant for measurement. Outside the presence of the jury, the court gave defense counsel an opportunity to "to make a record as to why you think the question is objectionable." Defense counsel explained it was not the particular question he believed was objectionable. He stated: "I think that it's not for the jury to ask any questions at all with the testimony or anything. You know, the presentation of the evidence is for the attorneys and with certain limitations to the court. [¶] . . . [¶] So the jury does not have that right to ask any questions." The trial court properly overruled the objection on grounds defense counsel did not object to the procedure regarding juror questions when the court explained it during voir dire, when the court read CALCRIM No. 106 (quoted above), or when other jurors asked questions during the prosecution's case.

At no time did Flores object on any of the constitutional grounds raised on appeal. (See, e.g., *People v. Lewis* (2006) 39 Cal.4th 970, 1028, fn. 19 [confrontation clause

9

claim not raised in the trial court is forfeited]; *People v. Heard* (2003) 31 Cal.4th 946, 972, fn. 12 [due process claim not raised in the trial court is forfeited].)  He did not object to the measuring process or the trial court's comments regarding the measuring process. He did not express any complaint with the manner in which the court responded to the question.  Defense counsel merely stated jurors should not be permitted to ask questions at all, a claim he does not reiterate on appeal.  Flores has forfeited his claim regarding the manner in which the trial court responded to Juror No. 9's question.

In his appellate reply brief, Flores argues his claim is not forfeited because he did not have a full and fair opportunity to make his objection.  The record does not support his claim.

In any event, assuming Flores had not forfeited his claim, we would reject it for the reasons stated below.

**Stipulation**

In response to Juror No. 9's question, the parties stipulated that Jerry is 5 feet 11 and one-half inches tall and appellant is 6 feet three-quarters inches tall.[2]  Before reading the stipulation, the trial court informed the parties, "that stipulation means that this is a proven fact."  Moreover, the court instructed the jury with CALCRIM No. 222 which provides, in pertinent part:  "During the trial, you were told that the People and the defense agreed, or stipulated, to certain facts.  This means that they both accept those facts as true.  Because there is no dispute about those facts you must also accept them as true."

---

[2] As discussed above, Jerry testified about the differences in appearance between him and appellant at the time of the incident.  According to Jerry, appellant was bigger and heavier than Jerry.  Appellant had a thick handlebar mustache compared to Jerry's thin mustache.  Appellant had hair while Jerry was bald.  Sylvia had known appellant since she was a little girl.  Assuming the measuring process and the trial court's comments about the measuring process were erroneous, any error was harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24.)  Given Jerry's testimony and the jury's own observations of the appellant and Jerry during trial, appellant would not have been able to prove mistaken identity *but for* the jury hearing about the measuring process and the court's comments about the measuring process.

10

The measuring process and the trial court's comments about the measuring process are immaterial. They are surplusage. The jury had to accept the measurement as stipulated by the parties. As discussed above, Flores did not object to the measuring process or dispute the measurement.

**Measuring process and trial court's comments**

The trial court did not show bias or act as an advocate. The inquiry was initiated by a juror. The manner in which the court responded did not favor one party over the other.

Flores indicates the trial court was required to respond to the juror's question by asking a witness to testify regarding the height difference between appellant and Jerry. The court was looking for an objective way to respond to the question, rather than asking Albert (the witness on the stand) if he knew the difference in height between his brothers, appellant and Jerry. In any event, the in-court height comparison was not completed and the response to the question was given in the form of a stipulation between the parties.[3]

There was no Confrontation Clause violation. Flores's argument he was denied an opportunity to cross-examine the trial court's "testimony" is without merit. The court's comments about the measuring process which led to the stipulation do not constitute "testimony." We do not believe the jury was confused and thought the court's comments were evidence. Nor do we believe the court's comments caused the jury to evaluate the evidence differently than if the jury had only heard the stipulation. During voir dire, the trial court informed the jury, "what I think about the facts is utterly and completely

---

[3] Flores argues the measuring process and the trial court's comments about the measuring process violated Evidence Code section 775, which provides: "The court, on its own motion or on the motion of any party, may call witnesses and interrogate them the same as if they had been produced by a party to the action, and the parties may object to the questions asked and the evidence adduced the same as if such witnesses were called and examined by an adverse party. Such witnesses may be cross-examined by all parties to the action in such order as the court directs." This statutory provision is inapplicable. The court did not call or examine any witness regarding the difference in height between appellant and Jerry. The height difference was stated to the jury by stipulation of the parties.

11

meaningless because I'm not the judge of the facts. You are." The court also instructed the jury with CALCRIM No. 3550 which provides, in pertinent part: "Do not take anything I said or did during the trial as an indication what I think about the facts, witnesses, or what your verdict should be." Moreover, as discussed above, the court instructed the jury with CALCRIM No. 222 regarding stipulations. We have no reason to believe the jury was confused by the absence of a contemporaneous instruction regarding the court's comments.

Appellant has not established error.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


CHANEY, J.

We concur:


ROTHSCHILD, Acting P. J.


JOHNSON, J.